## DERLETH *v.* ROACH & SEEBER CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—FACTS IN EMPLOYER'S REPORT PRIMA FACIE EVIDENCE.

   Where an employer's report of the accidental death of an employee, made after an investigation when all of the surrounding facts were known, fixed the hour of death at 5:15 in the afternoon, the department of labor and industry was justified in finding that the death occurred at said hour, the report being *prima facie* evidence of said fact and the objection that the finding was without evidential support is without merit.

2. SAME—ACCIDENTAL DEATH ARISING OUT OF AND IN COURSE OF EMPLOYMENT.

   Where an employee, who usually remained at his employer's office until about 5:30 in the afternoon, left for his home at about 4:30 with his employer's consent, for the purpose of testing out the batteries in his automobile preparatory to taking a trip the next day in the interest of his employer, his death at 5:15 from carbon monoxide poisoning, caused by running the motor in his garage, was an accident arising out of and in the course of his

employment within the meaning of the workmen's compensation act.

Certiorari to Department of Labor and Industry. Submitted April 11, 1924.    (Docket No. 64.)    Decided June 2, 1924.    Rehearing denied July 24, 1924.

Emma H. Derleth and another presented their claim for compensation against Roach & Seeber Company for the accidental death of their decedent in defendant's employ.    From an order awarding compensation, defendant and the Royal Indemnity Company, insurer, bring certiorari.    Affirmed.

*Miller, Eldredge & Eldredge,* for appellants.

*John J. Walsh,* for appellees.

FELLOWS, J.    Defendant Roach & Seeber Company is a corporation engaged in the wholesale grocery and produce business and operates a branch at Marquette. George Derleth, husband of plaintiff Emma H. Derleth, and son of plaintiff Mary Derleth, was in its employ at the Marquette branch.    A portion of each week he worked as a traveling salesman, and the balance of the time he worked in the office.    His salary was $175 per month, and he received a bonus which brought it up to $245 on an average.    In the usual course he made Ishpeming Monday, Negaunee Tuesday, and after that he made what was called the country trip consisting of a number of small towns.    Unless he went by automobile on the country trip it took two days; if he went by automobile it took one day at less expense and gave him more time in the office.    For a time the company furnished an automobile for Mr. Derleth to make his trips with, but when he bought a car an arrangement was made with him that he should use his own car in the business and they were to pay him 10 cents a mile for its use.

December 18th and 19, 1922, were exceptionally cold days. Mr. Derleth made his usual territory for these days by train, returning to Marquette about half-past 4. He usually remained at the office until about half-past 5, but, shortly after his return on the 19th, he expressed the opinion that he had better make the country trip by automobile. He was fearful that his batteries were frozen and went home early to test them out. It is admitted that he was found in the garage with the motor running and that he died from carbon monoxide poisoning which was generated by the motor. The defense to the claim by his widow for compensation is that the accident did not arise out of and in the course of the employment of deceased.

The department of labor and industry found that the accident occurred at 5:15 in the afternoon. This was within the usual hours of decedent's labor and defendant's counsel insist that it is without evidential support. But this was the time fixed in the report of the accident made by the defendant and it appears from the testimony that the report was made after an investigation of the facts by the agent of the employer. Under these circumstances the department was justified in considering the report as *prima facie* evidence of the fact. *Reck* v. *Whittlesberger,* 181 Mich. 463 (Ann. Cas. 1916C, 771) ; *McCartney* v. *Wood-Temple Co.,* 217 Mich. 505. No one was with the deceased when the accident occurred and all the surrounding circumstances were well known to the employer when the report was made. They were not so inconsistent with the hour fixed in the report as to destroy its *prima facie* effect. The finding in this regard was not without evidential support.

Upon the main question the case is not free from difficulties. Cases in point have been hard to find. The case is on the border line. The rule to guide courts in determining whether an accident arises out

of and in the course of the employment is well stated by Chief Justice Rugg in the leading case of *McNicol's Case,* 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 306). It was there said:

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

In *Punches* v. *American Box Board Co.,* 216 Mich. 342, the workman at his home took care of the team used by his employer. While bringing the team to the employer's place of business in the morning he apparently lost control of the horses and they ran away and he was killed. It was held that the accident arose out of and in the course of the employment. In *Clifton* v. *Kroger Grocery & Baking Co.,* 217 Mich. 462, the employee was required by the employer to take to his home the money collected at the store and safely keep it at his home. He was injured while

on his way home, carrying with him a considerable amount of money.    It was held that the accident arose out of and in the course of the employment, and it was there said by Justice STEERE, speaking for the court:

"Broadly defined, it may be taken as authoritatively settled that 'out of and in the course of his employment' covers those accidents which befall an employee while he is discharging some duty he is authorized or directed to perform for the furtherance, directly or indirectly, of his employer's business."

The case nearest in point with the instant case which we have found in the time at our disposal is *Kingsley* v. *Donovan*, 169 App. Div. 828 (155 N. Y. Supp. 801).    In that case the employee owned a motorcycle which he used in going to and from his work; he also used it in going to and from jobs for his employer, but received no compensation for its use.    While cleaning it after he had arrived for work, he received an injury for which he claimed compensation.    The defense was that the accident did not arise out of and in the course of his employment. Liability was sustained, one justice dissenting.

In the instant case the employee, during his usual hours of labor, and with at least the tacit approval of the employer, was performing labor beneficial to the employer in the line of his contract of employment and which his duty under his contract of employment required him to perform.    The act he was performing when he died and which caused his death was for the benefit of the employer, if he made the trip by automobile he saved expense to the employer and was able to put in an extra day in the office.    That the company preferred that he go by automobile appears from the following testimony:

"*Q*. Did your company prefer that he use a car to do this work?

"*A.* Yes, in fact we had furnished a car previous to the time he got his own for that."

Under all the circumstances we think the award was justified and it will be affirmed.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.