[Civil No. 2616.   Filed July 5, 1927.]

[258 Pac. 253.]

PACIFIC FRUIT EXPRESS COMPANY, a Corporation, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, R. B. SIMS, BURT H. CLINGAN and H. S. McCLUSKEY, Members of Said THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

Messrs. Baker & Whitney, for Petitioner.

Mr. John J. Taheny, for Respondents.

ROSS, C. J.—The petitioner, Pacific Fruit Express Company, self-insurer, seeks to have annulled an award made in favor of Marie Espinoza Grijalva, by the Industrial Commission, for the death of her son, Carlos Grijalva, upon whom she claims to have been dependent.

The Commission determined that Grijalva, who died on the sixteenth day of April, 1926, came to his

death through accidental means while he was in the employ of the petitioner. It is the contention of the petitioner that the award cannot be sustained because it was not shown that the death of Carlos Grijalva was produced by causes arising out of and in the course of his employment. Both the petitioner and the applicant for compensation seem to be satisfied with the finding on that point, one contending that it does not support the award, whereas the other insists that it does. The finding is as follows:

"That the above-named deceased, while employed in the state of Arizona by the above-named defendant employer, as a yard laborer, was engaged on the 16th day of April, 1926, in gathering and removing waste paper and refuse from the yard of said employer. On said day there was a train of railroad cars standing in the yard of said employer and said employee was resting from his labors under or between the cars when a sudden movement of the cars caused him to fall upon the track, with the result that the wheels passed over him and killed him. The death of said deceased on said day was proximately caused by an accident arising out of and in the course of his said employment."

The petitioner contends that the evidence does not justify the ultimate conclusion of the above finding, but does not except to the findings of fact as therein stated. The findings in that regard will therefore be treated as correct, and we recite the evidence, or some portions of it, only to explain and elucidate the findings.

The deceased was one of a number of employees of petitioner, working in its railroad yards at Tucson, Arizona, their duties being to sweep out cars after they were placed in the yards and thereafter to gather up from the yards the sweepings and make disposition of them. In the yards were six tracks. The evidence does not show how many of such tracks were occupied by cars on the day of the accident—

probably two, and maybe more. All the cars in the yard had been swept, this part of the work being finished at about 3 or 3:30 P. M. They then began the work of gathering the sweepings from the yard and continued such occupation until some 15 minutes before 4 o'clock, or quitting time, when it appears the deceased and two or three other workmen took seats on the rails, under one of the cars on track No. 2, and two or three stood near and in front of them in conversation; and while thus engaged, an engine was attached to the train occupying track No. 2, the impact causing the car under which deceased was sitting to run over him before he could get out of its way. The sweepings had not all been gathered from the yard when deceased and his fellow employees quit work, and no reason or excuse is given why they did not continue at that task.

While the deceased and his fellow-workmen were under the car, they were warned by two other employees of petitioner of the danger they were in. There was no evidence that it had been the habit or custom of the deceased and his fellow-workmen to rest under cars like this, or that the officers of the petitioner had any knowledge of their doing so.

When the cars were first placed in the yard it was the rule to indicate by blue flags that they were there for sweeping, and as soon as they had been swept the blue flags were removed indicating that the cars might be moved at any time. This rule was known by the yard employees, and they also knew the blue flag had been removed from the cars on track No. 2 some time before the accident.

It is obvious from the evidence that the deceased came to his death by reason of his own negligence, but that will not defeat the claim for compensation providing at the time he was killed he was engaged in the performance of the work he was employed to do, or in work incidental to his employment. As said

by us in the Leftwich case (*Ocean Accident & Guarantee Corporation, Ltd.,* v. *Industrial Commission, ante,* p. 265, 257 Pac. 641), just decided, the kind of accidental injury for which compensation may be allowed is one arising out of and in the course of the employment, and it is incumbent upon the claimant for compensation to show that his case falls within those terms. In making a decision as to whether the facts bring this case within the terms of the Compensation Law (Laws 1925, Chap. 83), it is well to have in mind as clear an understanding of the meaning of the phrase, "arising out of and in the course of employment," as it is possible to obtain, and for that reason we have taken the liberty of quoting at large from a recent case, *Brady* v. *Oregon Lumber Co.,* 117 Or. 188, 45 A. L. R. 812, 243 Pac. 96, a number of different expositions of the phrase collected by that court:

"The words 'arising out of and in the course of his employment,' as used in the Workmen's Compensation Law [Or. L., § 6616], should be given a broad and liberal construction. This is the holding of many courts, including our own. In a valuable note appearing in Ann. Cas. 1918B 769, the view of different courts concerning a workman's right to compensation under laws similar to our own is set down. We quote therefrom the following:

" 'To entitle a workman to an award of compensation under a Workmen's Compensation Act, his injuries must result from an accident both arising out of and in the course of his employment. The two elements must coexist. They must be concurrent and simultaneous. The one without the other will not sustain an award. Yet the two are so entwined that they are usually considered together in the reported cases, and a discussion of one of them involves the other. . . . "In the course of" points to the place and circumstances under which the accident takes place and the time when it occurred. In order to restrict beyond the reach of question the words "in the course of the employment," the words "arising

out of" were added, so that the proof of the one without the other will not bring a case within the act. The term "arising out of" in the act points to the origin or cause of the injury. It presupposes a causal connection between the employment and the injury. *Larke* v. *John Hancock Mut. L. Ins. Co.*, 90 Conn. 303, L. R. A. 1916E 584, 97 Atl. 320, 12 N. C. C. A. 308. The words "out of" involve the idea that the accident is in some sense due to the employment. *Griffith* v. *Cole Bros.*, 183 Iowa 415, L. R. A. 1918F 923, 165 N. W. 577, 15 N. C. C. A. 674.'

"In treating this question the Supreme Court of Texas said, in the case of *Lumberman's Reciprocal Assn.* v. *Behnken*, 112 Tex. 103, 110, 28 A. L. R. 1402, 1405, 246 S. W. 72: 'An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily, or reasonably inherent in or incident to, the conduct of such work or business. As tersely put by the Supreme Court of Iowa: "What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task." *Pace* v. *Appanoose County*, 184 Iowa 498, 168 N. W. 918; 17 N. C. C. A. 682.'

"In *Cox* v. *Kansas City Ref. Co.*, 108 Kan. 320, 323, 19 A. L. R. 90, 93, 195 Pac. 865, the Supreme Court of Kansas said: 'The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.'

"In *Coronado Beach Co.* v. *Pillsbury*, 172 Cal. 682, L. R. A. 1916F 1164, 158 Pac. 212, 12 N. C. C. A. 789, the court spoke as follows: 'The accidents arising out of the employment of the person injured are those in which it is possible to trace the injury to the nature of the employee's work or to the risks to which the employer's business exposes the employee. The accident must be one resulting from a risk reasonably incident to the employment.'

"In the case of *Fournier's Case,* 120 Me. 236, 23 A. L. R. 1156, 113 Atl. 270, the Supreme Court of Maine, in discussing the real test for determining when an accident arises out of and in the course of the employment of an employee under the Workmen's Compensation Law, thus announced a doctrine that runs through many leading cases: 'If an accident does not occur "in the course of," it cannot "arise out of," the employment. In this particular class of claims the determining factor is, we think, whether the accident occurred in the course of the employment. . . . The words "in the course of the employment" relate to the time, place, and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. *Westman's Case,* 118 Me. 133, 142, 106 Atl. 532; *Larke* v. *John Hancock Mut. L. Ins. Co., supra; Bryant* v. *Fissell,* 84 N. J. Law 72, 86 Atl. 458, 3 N. C. C. A. 585; *Eugene Dietzen Co.* v. *Industrial Bd.,* 279 Ill. 11, 18, Ann. Cas. 1918B 764, 116 N. E. 684, 14 N. C. C. A. 125.' "

The accident in which deceased was killed occurred within the period of his employment, but he was not at the time in the performance of any duty owing to his employer, nor was he at a place that his duties required him to be, nor can his death be traced to the nature of his employment, nor to a risk to which his employer's business exposed him. When he left his task of picking up the sweepings from the yard, ceased to do the work he was engaged to do, and for his own comfort seated himself under a car the better to engage in the pleasant pastime of conversation with his coworkers, he abandoned his work and for the time being was doing nothing he was engaged to do. His situation is not like that of an employee who at intervals, because of the nature of his work, has rest periods, or periods in which he must await some

happening or occurrence before he can proceed with his task. In such case the rest period would be as much within the scope of his employment as when actually working at his task, and if injured during such interval he would be entitled to compensation if at the time he was in a place where he might reasonably be. *Northwestern Iron Co.* v. *Industrial Commission,* 160 Wis. 633, 152 N. W. 416; *Weis Paper Mill Co.* v. *Industrial Commission,* 293 Ill. 284, 127 N. E. 732.

We think clearly there was a break in the deceased's employment when he left off doing the thing he was employed to do to engage in something for his own pleasure and accommodation. In taking his place under a car, as he did, when there was work for him to do and which he was employed to do, he was doing something wholly foreign to his employment. What he was doing at the time of his injury was not reasonably necessary to his health or comfort, such as quenching his thirst, relieving his hunger, protecting himself from excessive heat or cold—acts generally recognized as incidental to his employment. What he was doing was not his work nor was it incidental to his work, but independent of the relation of employer and employee.

The Commission's learned counsel has filed very extensive briefs and cited numerous cases which he asserts in principle uphold the award in this case. We do not think it would be of any profit to discuss these cases or distinguish them further than to say they are in our opinion radically different in their facts from the facts here. We have not found and counsel has not cited us to any case where compensation was allowed for an injury received by a workman while performing some act outside of his employment, or some act not incidental thereto.

There is a well-defined and broad distinction between the right to compensation where the employee

is injured while performing some act for his employer in the course of his employment or incidental thereto, and the employee injured while doing something for his own pleasure or accommodation. As it would be unreasonable to hold that his departure from the usual manner of doing the task, or doing it negligently, would defeat a claim for compensation by the employee or his dependents, so it would be very unreasonable to hold an employer liable for compensation to an employee injured while doing something not only foreign to his employment but at a place where he had no right to be.

We conclude that the deceased's injury did not occur in the course of his employment, and it must follow that it did not arise out of it.

The award is annulled.

LOCKWOOD and McALISTER, JJ., concur.