WYLIE C. SPEAS, APPELLEE, V. BOONE COUNTY, APPELLANT.

FILED OCTOBER 25, 1929. No. 26928.

*Holmes, Chambers & Holland,* for appellant.

*Vail & Flory, contra.*

*Hall, Cline & Williams, amici curiæ.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK, District Judge.

GOSS, C. J.

This is an appeal by the county from a judgment in favor of Wylie C. Speas under the workmen's compensation act.

This is the second time this case has been argued before

us; an opinion affirming the judgment was filed ·June 4, 1929, but was not published; on June 29, 1929, a motion for rehearing was sustained and the judgment of affirmance was set aside; on October 5, 1929, upon suggestion of the death of Wylie C. Speas, the cause was revived in the name of John S. Speas, administrator; and on October 9, 1929, the case was reargued and was reassigned to the same member of the court for an opinion on the merits.

It was stipulated on the trial that the plaintiff was injured on the 4th of October, 1926, and by reason of the injury was unable to return to work until March 1, 1927; that the medical expenses were $139 for one doctor, $39.50 for another, and the hospital bill was $38.

The district court found that the injury arose out of and in the course of employment; that the employee was receiving wages of $3.50 a day or $21 a week and was entitled to compensation at the rate of $14 a week, or a total of $295 for himself, $178.50 for doctors, $38 for hospital, and $50 for attorney's fee.

The county claims (1) that the injury did not arise out of and in the course of the employment, and (2) that no petition was filed within a year after the accident occurred, by reason of which the statute of limitations had run.

The evidence shows that Speas had been employed on road work for the county for a considerable time. For straightaway dragging he received a definite sum per mile; for special work, such as dragging down and leveling newly prepared stretches of road, the pay was $3.50 a day for a man and $7.50 a day for a man and a team of four horses. The reason for the two classes of wage scales was that the straightaway mileage could readily be checked by well-known sectional subdivisions, while the dragging could not be definitely and easily measured; so the latter was paid for by the day. On the 4th of October, 1926, Speas was using a four-horse team furnished by him, dragging for the county on the road passing his farm. At about 11:30 he ceased dragging for the forenoon because he was then in front of his home. He drove the rig into the yard and unhitched

with the aid of his son who came from the house to help him. The horses went to the tank to drink and thence to the barn. Speas entered to tie them and, as he went past them for this purpose, one of them, theretofore gentle, kicked him, causing the injury complained of. Almost immediately the injury was reported to the county foreman under whom Speas worked. The county commissioners afterwards learned of the injury and expected to pay compensation to the injured employee. It was his duty to furnish feed and to care for the team. It was intended by both parties that Speas and the team should continue the road dragging that afternoon.

The county now claims that, the injury being caused by the kick of a horse furnished by the employee, happening at the noon hour and not while the employee was actually engaged in dragging the road, therefore the employer is not liable.

It is difficult to formulate a definition of the words "arising out of and in the course of his employment," as phrased by the statute (Comp. St. 1922, sec. 3024), so as to cover all cases of compensable injury to an employed workman or so as to exclude those that are not compensable. Generally it may be said that an injury "arises out of" an employment when there is a reasonable causal connection between the conditions under which the work is, in all the circumstances, required to be performed and the injury received while the employee is thus engaged; and that the injury is received "in the course of" the employment when, at the time the injury is received, the workman is engaged at the work he is employed to perform or in some duty incidental to that work. If incidental, it must be incidental to the main character of the business on which the employee was engaged for the employer. It cannot occur independent of the relation of master and servant. Even with such general principles in mind, it is sometimes a close question to discover whether an accident arises out of an employment and whether it occurred in the course of the employment. It may therefore be said of this element or phase of work-

men's compensation cases that, in a greater degree perhaps. than in other cases, each individual case stands or falls on its own facts.

In his argument for affirmance, appellee cites *Tragas v. Cudahy Packing Co.*, 110 Neb. 329, as controlling in principle. In that case this court affirmed a judgment allowing compensation to Tragas, who, at the time of his injury, was engaged in sharpening a chisel for the purpose of cleaning some pans. It happened during the noon hour, and was done on claimant's own time, for which he was not paid. It was held that the work on which Tragas was engaged was incidental to his employment. When the injury occurred, the employee was grinding the chisel on one of the employer's grindstones, which was not equipped with a safety guard as provided by law. While the opinion does not so state, yet it may be inferred that the employee was using the employer's grindstone on the employer's premises. We do not discover that this case has been subsequently cited on the phase involved in the present case.

Appellee also cites *Punches v. American Box Board Co.*, 216 Mich. 342. In that case an employee, who was expected to care for and feed a team of horses he was hired to drive, was in the habit, with his foreman's knowledge, of driving them home at night for convenience and of keeping them in his own barn. In driving them to his employer's place of business to begin the day's work, he was injured. It was held that he was acting in the scope of his employment and was entitled to compensation.

Another case cited by appellee is *Brown v. Bristol Last Block Co.*, 94 Vt. 123, where a man employed with his team was killed by it about the noon hour, after he had eaten his dinner, while attempting to stop the team when it was running away. He was run over and killed. It was held that the accident arose out of and in the course of his employment. In the opinion it was said: "The horses were hired by the employer, and, for the time in which the accident happened, their services belonged to it, and the employer was materially interested in that service." The opinion

cites *Ingram's Admr'x v. Rutland R. Co.*, 89 Vt. 278, wherein allowance of compensation was upheld for the death of a fireman killed by a switch engine in the yards after he had left his locomotive to get a glass of milk at a milk station across the tracks. Many cases are cited in the *Ingram* opinion showing what are permissible digressions and interruptions without so disturbing the relation of master and servant as to do away with the liability to pay compensation.

The only other case cited by appellee in his argument for affirmance is *Derleth v. Roach & Seeber Co.*, 227 Mich. 258. The employee was killed by monoxide gas in his own garage while caring for his own automobile. He had gone home near the close of the day to prepare the car for a trip to be taken as a traveling salesman. The trip was usually taken by train, but whenever he used his car the employer made an allowance of 10 cents a mile for its use. The death occurred at 5:15 p. m., which was within the employee's usual hours of service. The injury was held compensable as "arising out of and in the course of his employment." The opinion cites *Punches v. American Box Board Co.*, *supra;* quotes *Clifton v. Kroger Grocery & Baking Co.*, 217 Mich. 462, where the employee was injured while, as directed by his employer, taking home for safe-keeping a considerable amount of money collected at the employer's store; and cites *Matter of Kingsley v. Donovan*, 155 N. Y. Supp. 801, where the employee owned a motorcycle used in going to and from his work and between jobs, but received no pay for its use. While cleaning it after he had arrived for work he was injured. In each of the three cases last cited the injury was held to be compensable.

In its argument for reversal, appellant relies on a Vermont case, *Kneeland v. Parker*, 100 Vt. 92: "Where teamster, owning pair of horses, who had been engaged to draw logs of employer from wood lot for distance of four miles to employer's mill at specified rate per thousand feet, without agreement to haul any specific quantity or to work for any definite time, stopped at hotel midway between wood

lot and mill for his own convenience, and there received injuries, resulting in his death, while cleaning off one of the horses known by him to be vicious, preparatory to commencing his day's work, by being trampled upon by such animal, held that accident did not arise out of nor in course of his employment." The opinion distinguishes the case from *Brown v. Bristol Last Block Co.*, 94 Vt. 123, by quoting from the last-named case: "The horses were hired by the employer, and, for the time in which the accident happened, their services belonged to it, and the employer was materially interested in that service; while Kneeland was not hired by the day, but by the quantity hauled, could quit the job at any time, and the accident happened in the morning before he had even started upon the work of a day for the defendants."

Another case cited by appellant on this point is *Morey v. City of Battle Creek,* 229 Mich. 650. Keagle was a driver employed by one Avery, who contracted with the city to furnish it teams and drivers as needed at 85 cents an hour. Keagle was paid by Avery one-half of the amount Avery received. At 4:45 in the afternoon the officer in charge of city work told Keagle there was not sufficient time to get another load of dirt and he could go home. He at once left, and when about three-quarters of a mile from the work one of his horses was bitten by a dog, the team ran away, and Keagle was killed. His widow, Mrs. Morey (who had again married), was denied compensation in accordance with the general rule in Michigan construing the compensation law as not applying to accidents which befall employees in going to and leaving the place of employment. *Hills v. Blair,* 182 Mich. 20; *Hopkins v. Michigan Sugar Co.,* 184 Mich. 87.

In particular circumstances the Michigan court has made exceptions to the general rule stated above. In *Beaudry v. Watkins,* 191 Mich. 445, a boy was employed by a laundry as a delivery or errand boy, and, on returning from lunch at home, at noon, on his bicycle, caught on a motor truck, was thrown and was run over by another vehicle. He had received permission to go home to his lunch on this occasion,

getting a package on his way and returning with it after-wards. *Held,* that the accident arose out of and in the course of his employment. In *Kunze v. Detroit Shade ·Tree Co.,* 192 Mich. 435, Kunze was a foreman, tree trimmer, and planter, whose duty was to go from job to job in Detroit, and while presumably about to take a street car to proceed on his way from one job of inspection to another he was struck by an automobile and fatally injured. *Held* compens-able. In *Clifton v. Kroger Grocery & Baking Co., supra,* plaintiff was instructed to take home at night for safe-keep-ing all money received after banking hours. Where, while so doing, he was struck by an automobile and injured, it was held that the accident arose out of and in the course of his employment.

Appellant relies particularly on three Minnesota cases, in which compensation was denied: *State v. District Court of Hennepin County,* 144 Minn. 259, where relator's husband, who furnished his services and his team and running gears of his wagon to Minneapolis for driving a sprinkling wagon from eight in the morning to five in the evening, and was killed by one of his horses while caring for it one evening in the stable; *Simonds v. Reigel,* 165 Minn. 458, where plain-tiff's husband, a teamster in a gravel pit four miles from his home, leaving his team to be fed by another, at noon went on a truck of another loaded with gravel from the pit to his home, and was killed near his home while attempting to get off the truck before the driver had stopped it; and *Jotich v. Village of Chisholm,* 169 Minn. 428, where an employee with his own team, hauling dirt at a stated price per day or hour, drove at noon from the place of work, about a mile distant, to eat and feed his team, and while unhitching his team suffered an accidental injury. In all three of these cases compensation was denied.

It may be truly said that the ultimate judgments in these cases resulted from the court's interpretation and applica-tion of the Minnesota statutes by which the words "arising out of and in the course of employment" are further mod-ified by statute denying compensation to employees "except

while engaged in, on, or about the premises where their services are being performed, or where their service requires their presence as a part of such service at the time of the injury, and during the hours of service of such workmen." Gen. St. Minn. 1913, sec. 8230 (i) ; Mason's Minn. St. 1927, sec. 4326 (j). Our statutes are almost identical with the Minnesota statute. By section 3075, Compiled Statutes of Nebraska 1922, defining the terms used, and by subdivision (c) thereunder, the term "personal injuries arising out of and in the course of employment" is declared "not to cover workmen except while engaged in, on, or about the premises where their duties are being performed, or where their service requires their presence as a part of such service at the time of the injury, and during the hours of service of such workmen."

Thus, it appears that the cases are not harmonious. The Minnesota cases, cited by appellant, to which we have referred are not reconcilable with the claims of the appellee. However, in view of our decision in *Tragas v. Cudahy Packing Co.*, *supra*, we have committed ourselves rather definitely to the view that, if the work at which an employee is engaged when injured is incidental to his employment, his injury should come under the act. There, as here, the injury happened at the noon hour, and occurred on the workman's own time, for which he was not paid. There it occurred on the premises of the employer. Here, it is true, it did not occur at the place of work, but that was a mere incident due to the fact that the dragging on the county road, on that particular day, happened to be near the home of the employee, so that he ate at home and fed the team there for convenience. If the work had been a few miles or more distant, he would have taken his lunch and feed for the horses and would have fed them right at the place of employment. They could not have been fed on the road itself. At the home they were little more removed from the exact place of work than if on the roadside. The team was hired and paid for separately. The evidence shows that, while Speas furnished the team, yet it was owned by his son. We

state this as a fact and not for the purpose of basing any argument upon it. Speas was paid by the county for the use of the team. It was the duty of Speas to feed the team. It was implied in his contract of employment that he would feed them at noon. It was as important to feed them in preparation for the afternoon's work as it was necessary for Tragas to have a sharp chisel for the purpose of cleaning out the pans on which he was working during regular working hours. Tragas could have sharpened the chisel during the hours for which he was paid instead of taking a portion of his hour for rest or refreshment thus to further his employer's business. Speas could not both feed the team and eat his own lunch while the team was working. If, while working the team on the road, something had gone wrong with the harness and he had been kicked by the horse while adjusting the harness, or if, while unhitching or feeding the team right at the place of work, he had been so kicked, this would seem to be a stronger case than the *Tragas* case. The foreman, under whom Speas worked, and plaintiff also, testified that it was customary for Speas to take the horses home to feed them while on this job of dragging near his place. The work extended past his home on the day in question, and he stopped right there for the noon hour, drove into the yard, and unhitched. A moment afterward he was injured. To say that his employment ceased before all of the horses reached their stalls, or that it ceased during the usual hour for feeding, is to draw a very strict line against the employee. The compensation law is to be liberally interpreted in favor of the workman. The county commissioners and the foreman, as shown by the evidence, thought the employee was entitled to compensation and the county at all times expected to pay it. It seems to us that the logic of the situation requires that we either conclude that Speas was entitled to compensation or that we overrule the *Tragas* case. We are satisfied with the latter case, and therefore conclude that, on the merits, Speas was entitled to recover; that his feeding the team at the place of his injury was incidental to his employment and that his injury was received in the course thereof.

The only other question is the claim that the statute of limitations barred the suit. The county itself at all times recognized liability. Speas received hospital service and medical service, and it was expected that the bills would be paid by the county and that he would receive personal compensation. The county was covered by insurance and turned the matter over to the insurance company to pay. In the meantime, more than a year went by before a petition was filed. The injury occurred October 4, 1926. The petition was filed with the compensation commissioner January 9, 1928. The insurance company, defending for the county, claims that this came too late under the second clause of section 3061, Comp. St. 1922, requiring the petition to be filed "within one year after the accident." Speas pleaded that he filed his claim for compensation in December, 1926, and that it was agreed between plaintiff and defendant that plaintiff was entitled to compensation and that his medical expenses would be paid, but that the insurer fraudulently induced him not to file his petition and represented as late as September 16, 1927, that his claim was being taken care of and would soon be paid and never denied liability until after November 17, 1927.

Plaintiff introduced two letters written to him on the letter-heads of the insurance company by counsel for appellant who argued the case before us. One of these letters, dated September 2, 1927, asked why Speas went to two doctors, one at St. Edwards and one at Columbus, both of whose bills he had received; the other letter, dated September 16, 1927, said, quoting it in full: "I have your letter of recent date and I am about to close your claim. Will you kindly advise me by return mail the date upon which you were able to return to work after your accident?"

After hearing the evidence, the district court found that the county "had agreed to the payment of compensation to the plaintiff prior to the expiration of one year from the date of the injury and that this action is not barred."

The insurance company is not a party to the suit. If it were, and had a right to defend on the merits of the suit

as against it, we might consider whether, after its conduct and correspondence, it might equitably and justly assert the statute of limitations. It pretended to be about to close up plaintiff's claim and to pay his compensation when the year was expiring. It lulled him into inaction until a year from his injury had passed. To have filed a petition when the county had admitted liability, and when the insurer of the county had in turn in effect admitted its liability to the county and had declared its intention to pay, would have been to do a useless and annoying thing both against the county and its insurer. So we agree with the finding of the district court that the county had agreed to pay the compensation prior to the expiration of one year from the date of the accident, and therefore the plea of the statute of limitations is of no avail under the first clause of section 3061, Comp. St. 1922, which says: "Shall be forever barred unless, within one year after the accident, the parties shall have agreed upon the compensation payable under this act." To hold otherwise, in the circumstances of this case, would be to adopt a policy that would defeat the real purpose of the act. *Parson v. Murphy*, 101 Neb. 542; *Baade v. Omaha Flour Mills Co.*, 118 Neb. 445. This last case aptly says: "This jurisdiction has repeatedly held that the workmen's compensation act 'is one of general interest, not only to the workman and his employer, but as well to the state, and it should be so construed that technical refinements of interpretation will not be permitted to defeat it.' "

The plaintiff was allowed an attorney's fee of $50 in the district court. He ought to be allowed a fee of $100 in this court.

For the reasons stated, the judgment of the district court is affirmed, and the plaintiff is allowed an additional fee of $100 for services of his attorneys in this court, the same to be taxed as costs.

AFFIRMED.

REDICK, District Judge, dissenting.

I am compelled to dissent from the opinion in this case, and will briefly state my reasons therefor.

By our statute "personal injuries arising out of and in the course of employment" is declared "not to cover workmen except while engaged in, on or about the premises where their duties are being performed, or where their service requires their presence as a part of such service at the time of the injury, and during the hours of service of such workmen." Comp. St. 1922, sec. 3075. It seems to me that a proper construction of this provision precludes an allowance of compensation to plaintiff. It is evident, to my mind, that the words, "in some work for the employer," or others of like meaning, are understood after the word "engaged." It seems self-evident that the mere fact that he was in, on or about the employer's premises, but engaged in some act entirely disconnected with his service, would not entitle him to compensation for injuries received as the result of, or incident to, such act, as, for instance, cleaning his nails, a personal altercation with a visitor, or many other occurrences which will readily come to mind. The act which produced the injury must be one required to be done in performance of work for the master, and as a part of that service, not one which it was his duty or pleasure to perform regardless of his employment. The act being performed must be one required by the nature of the employment or so incident to it that it may reasonably be considered a part of the service; and there must be a causal connection between the services due the employer and the injury. There is no more causal connection between the work of dragging the roads and feeding the horses than there is between dragging the road and feeding the employee. It would seem that no one would claim as compensable an injury received by the employee while eating his lunch, occasioned by a fall of plaster from the ceiling, and yet it was just as essential to the performance of the employer's work that the employee be fed as that the horses be fed. To put it plainly, the horses were fed, not because the employee was engaged in dragging the roads for the county, but absolutely independent of that fact. They would have been required to be fed just the same if the plaintiff had been intending to

hitch them to a plow on his farm or for any other purpose for which their services were needed, or, in fact, if they were to remain in their stalls all day. The fact that the team and driver were employed for the purpose of dragging the roads does not convert the service of the driver in feeding and taking care of his team into a service for the master, for, as above suggested, such service was independent of the employment, and was required merely that the employee might fulfill his contract. He might as well have used other horses, oxen, or an auto-truck. He had no hours of service, but was paid by the mile. If it had rained before or after the injury, he could not have performed the work of dragging the roads. In short, it seems an unwarranted stretch of language to say that in feeding his own horses, which he would have been required to do in any event, he was engaged in the service of the master.

The strongest argument advanced for allowance of compensation is that, if the plaintiff had been several miles from home at the noon hour and had simply driven his team to the side of the road to feed them and partake of his own lunch, and had been kicked by one of the horses and received an injury, a compensable case would be presented. I recognize the force of the illustration; but, assuming the correctness of the conclusion stated, I apprehend that the situations may be distinguished as the supposed situation may come within that portion of the clause of the statute, "where their service requires their presence as a part of such service." In such case, the act of feeding the horses was so closely connected with the performance of the work that it might be considered as incident to and a part of it. Analogy is not always a dependable method of reasoning, and I think it is faulty here, for the reasons stated and because of the different circumstances of the situation.

I think the Michigan, Vermont and New York cases relied upon in the opinion are not controlling, for the reason that Michigan and New York, and, so far as I am able to discover, Vermont, have no statute limiting and defining the phrase "arising out of and in the course of employ-

ment." Moreover, many of those cases are distinguishable. In *Punches v. American Box Board Co.*, 216 Mich. 342, it was part of the servant's business to drive and care for the employer's horses. In *Derleth v. Roach & Seeber Co.*, 227 Mich. 258, stress is laid on the fact that the death occurred within the hours of service of the employee. In *Clifton v. Kroger Grocery & Baking Co.*, 217 Mich. 462, the employee was actually performing a service for the master at the time of his injury. In *Matter of Kingsley v. Donovan*, 155 N. Y. Supp. 801, the injury occurred during the hours of service, and while cleaning the motorcycle belonging to the employee, but used by him in the performance of his duties.

The case of *Brown v. Bristol Last Block Co.*, 94 Vt. 123, sustains the plaintiff's contention, but *Kneeland v. Parker*, 100 Vt. 92, in which compensation was refused, is not distinguishable in principle from the case at bar, though the facts are somewhat dissimilar.

Finally, it is suggested by the opinion that, in order to reverse this case, it will be necessary to overrule the case of *Tragas v. Cudahy Packing Co.*, 110 Neb. 329. I think that case is clearly distinguishable by the fact that Tragas was engaged in work solely attributable to the fact of his employment. The sharpening of the chisel would not have been undertaken by him but for the fact that it was to be used exclusively in the performance of the work for which he was employed. Furthermore, the chisel belonged to the employer and was an instrumentality specially supplied for the use of the servant. The feeding of the horses in the present case was an independent transaction, and was required to be done regardless of the service due his employer and not because of such employment.

For the above reasons, I respectfully dissent from the opinion of the court.