MONAHAN·v. HOAGE (THE WILLARD, Inc., Intervener).

No. 6760.

United States Court of Appeals for the District of Columbia.

Decided April 12, 1937.

M. F. Mangan, of Washington, D. C., for appellant.

Arthur J. Phelan, Leslie C. Garnett, and Allen J. Krouse, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This case was brought by the appellant in the district court seeking an injunction to restrain the enforcement of a compensation order entered by the deputy commissioner of compensation denying a claim of appellant for compensation under the Workmen's Compensation Law of the District of Columbia (Longshoremen's and Harbor Workers' Compensation Act, 33 U.

S.C.A. § 901 et seq., made applicable to District of Columbia, 45 Stat. 600 [D.C. Code 1929, T. 19, §§ 11, 12, 33 U.S.C.A. § 901 note]).

Plaintiff's bill of complaint was denied by the district court and his case was dismissed, whereupon the present appeal was taken.

The findings of fact and the conclusions thereon as reported by the deputy commissioner are as follows:

"That on the said day the claimant herein, while in the employ of the employer above named, sustained an injury as a result of falling into an air shoot or ventilator running from the roof down into the building; that the claimant had gone to the eleventh floor where the locker room for the housemen of the Willard Hotel was located and where the employees were given the privilege of eating their midday luncheon, this room being provided by the employer; that from the eleventh floor the claimant had climbed a stairway which is used to provide a passageway to the roof; that he had gone out upon the roof of the building; that it began to rain and the claimant sought shelter under the roof of the ventilator; that the said ventilator was not constructed for the purpose of providing a rest or any service for employees or the general public; that it was merely a covering over the ventilator extended through the roof; that it was built up from the top of the roof about two feet with a metal casing; that there was a mesh wire, about four wires to the inch, stretched across the door of the metal casing to keep debris from falling down the shoot to the fan; that the claimant was required to stoop low and work his way into the position he was found on top of the wire covering, and as he threw himself upon this covering to protect himself from the rain, it gave way, and he fell to the bottom of the shaft; that as a result thereof the claimant sustained injuries described as a 'compressed fracture of the twelfth dorsal, and a fracture of the transverse process of the first and second lumbar vertebrae'; that the insurance carrier denied the liability for medical treatment and compensation for disability on the ground that the claimant did not sustain an injury which arose out of and occurred in the course of his employment.

"It is found that the injury occurred on the premises of the employer, and during the hours the claimant was expected to be

on the said premises. It is further found that the claimant deliberately put himself into a dangerous position and had deviated from the course of his employment by so doing; that he was performing no act in the interest of his employer's business; that he was doing something entirely unnecessary, unexpected, and unrelated to the occupation in which he was engaged, and that he went out of his way for personal reasons to place himself unreasonably in a dangerous position; that the claimant sustained an injury which occurred during the hours of his employment, but that the said injury did not arise out of his employment, as required in section 2 of the act.

"Upon the foregoing findings of fact, it is ordered by the deputy commissioner that the claim for compensation be and it hereby is rejected for the following reason:

"1. That the injury did not arise out of the claimant's employment as required in section 2 of the act."

The testimony discloses that the claimant was employed by The Willard, Inc., a large hotel operated in Washington, D. C., as a floor polisher and "general handy man." His working hours were from 8 o'clock in the morning until 5 in the afternoon, with one hour off at noon for resting and eating his lunch. He had the privilege of going out during the noon hour should he so desire, but he always remained in the building and ate his lunch in a room on the top floor, which was furnished to the employees for that purpose. During the noon hour plaintiff if in the building was subject to call by the employer in event of any exceptional demand for his services. On the day of the accident claimant ate his lunch in the room furnished for that purpose, and then ascended a flight of steps and went out upon the roof of the building. There was free and easy access to the roof by a stairway and door which were open, and there was no prohibition preventing employees from going to the roof. The day when the accident occurred was very warm, and claimant went to the roof for the purpose of obtaining fresh air and avoiding the heat. Soon after claimant came upon the roof it began to rain, and in order to protect himself from the rain, he crawled under a covering which was placed over an air shaft or ventilator in the roof. The opening or mouth of this shaft was on a level with the roof and was about 2½ feet square. A metal strip about 2 feet in height surrounded the shaft opening, and a wire mesh cover was fastened over its top in order to serve as a screen to keep dirt and debris out of the shaft. The screen accordingly was about 2 feet above the level of the roof. There was a covering or roof over the screen at a distance of about 2 feet above it. The claimant in order to get out of the rain crawled part way between the screen and its covering or roof, whereupon his weight broke through the screen, and he fell into the shaft and through it to the floor below, causing the injury for which he seeks compensation under the statute.

It will be noted that the deputy commissioner did not deny that appellant's injury arose in the course of his employment, but denied that it arose out of his employment, and for this reason denied compensation.

We agree with the finding that claimant's injury did not arise out of his employment. It seems clear from the statement of facts made by the deputy commissioner that the claimant continued to be an employee of the employer during the noon hour allowed him for lunch, and that he did not forfeit this relation when he left the room ordinarily used by the employees for that purpose and went to the roof of the building for rest and fresh air.

On the other hand, however, the screen over the mouth of the air shaft was plainly an unsafe place for the claimant to rest upon. It was not designed for any such purpose and so far as appears it was not used in that way, nor had the employer so far as appears ever given any express or implied authority to plaintiff or any of his employees to make such a use of the shaft screen. It must have been obvious to any one that it would be extremely dangerous to rest upon the screen over the shaft. Claimant knew that he was exposing himself to an extreme risk without the knowledge or consent of his employer, in a manner wholly foreign and unrelated to any of the duties of his employment. He thus exposed himself to a hazard for which the employer should not be held responsible. This conduct had the effect of interrupting and suspending his relation as an employee of the employer for the time being and defeated his right to compensation for injury sustained by him under the circumstances.

In Haller v. City of Lansing, 195 Mich. 753, 761, 162 N.W. 335, 337, L.R.A.1917E, 324, it is said:

"From an examination of cases cited by defendant and others we have examined in which it has been held that an employee injured on the premises of his employer during the noon hour or other temporary suspension of work was not under the act, we think it manifest that the controlling reason for denying an award in those cases rests upon the proven facts that the employee broke the so-called nexus between workman and employer by some manifestly reckless and unreasonable hazard, amounting to intentional and willful misconduct, or by disregarding or disobeying, some warning of danger at the place of injury or prohibition relating to the thing being done, either addressed to the workman or promulgated as a general rule of conduct while on the premises."

In Pacific Fruit Express Co. v. Industrial Comm., 32 Ariz. 299, 258 P. 253, 256, 55 A.L.R. 975, it is said:

"There is a well-defined and broad distinction between the right to compensation where the employee is injured while performing some act for his employer in the course of his employment or incidental thereto, and the employee injured while doing something for his own pleasure or accommodation. As it would be unreasonable to hold that his departure from the usual manner of doing the task, or doing it negligently, would defeat a claim for compensation by the employee or his dependents, so it would be very unreasonable to hold an employer liable for compensation to an employee injured while doing something not only foreign to his employment but at a place where he had no right to be."

See, also, Heitz v. Ruppert, 218 N.Y. 148, 112 N.E. 750, L.R.A.1917A, 344; Mann v. Glastonbury Knitting Co., 90 Conn. 116, 96 A. 368, L.R.A.1916D, 86; Brady v. Oregon Lumber Co., 117 Or. 188, 243 P. 96, 45 A.L.R. 812; Griffith v. Cole Bros., 183 Iowa, 415, 165 N.W. 577, L.R.A.1918F, 923; Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402; Cox v. Kansas City Refining Co., 108 Kan. 320, 195 P. 863, 19 A.L.R. 90; Coronado Beach Co. v. Pillsbury, 172 Cal. 682, 158 P. 212, L.R.A.1916F, 1164; Withers' Case, 252 Mass. 415, 147 N.E. 831, 40 A.L.R. 1475; Jacobson's Case, 248 Mass. 466, 143 N.E. 317; Haggard's Case, 234 Mass. 330, 125 N.E. 565.

It is said in 71 C.J. 657:

"A peril which arises from the negligent or reckless manner in which an employee does the work which he is employed to do may in many cases, be held to be a risk incidental to the employment; and the same is true where he performs an authorized act in a forbidden manner, a distinction being taken in this regard from cases in which the act is altogether outside of, and unconnected with, the employment. An accident cannot be said to arise out of the employment where it is due to a new and added peril to which the employee by his own conduct has needlessly exposed himself, unless there has been an acquiescence by the employer."

The decree of the lower court is affirmed.