## Meem Haskins Coal Co. et al. v. Jent.

(Decided April 20, 1937.)

CRAFT & STANFILL for appellants.

NAPIER & EBLEN for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The case presents the question whether or not the injury sustained by the appellee, John F. Jent, a claim-

ant for compensation under the Workmen's Compensation Act (Ky. Stats. sec. 4880 et seq.), arose out of and in the course of his employment by the appellant. The appellee was a deputy sheriff, and his principal employment was that of mine guard or police officer. Other duties were to check in the workmen and to list the outgoing cars of coal; also occasionally to accompany the cashier of the company to Hazard for bringing out the pay roll and to go to the village of Jeff, and sometimes to Hazard, for supplies. He received a salary of $100 a month and the use of a residence. In making the trips referred to, he used his personally owned automobile, for which he was paid $1.50 a trip. In taking men arrested for drunkenness on the premises to jail or before a magistrate, he was not paid anything by the company for the use of his car, but was entitled as a state officer to certain statutory fees for making the arrests. No orders or directions had been given the employee as to what to do with prisoners.

One of the springs of his automobile had become so weak he could not use it. This was apparently caused by having carried heavy articles for the company. Employees had been permitted to use its machine shop to repair their personal things, and the shop foreman suggested to Jent that he bring the spring to the shop and he would help him fix it. He took the spring there, along with a leaf from another. It was too long, and while he and a fellow employee were trying to cut it off, a sliver of steel struck Jent in the eye and destroyed the sight. The company's superintendent testified that Jent was not required to own or keep an automobile for the performance of his duties, but he, Jent, stated he could not have done so without a car.

Reversing the finding of the Workmen's Compensation Board, the circuit court held the appellee was entitled to compensation. The appeal is from that judgment.

The statute, section 4880, authorizes compensation "for a personal injury sustained by the employee by accident arising out of and in the course of his employment." The leading authority on the meaning of this phrase is In re McNicol, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, in which it is said:

"In order that there may be recovery the injury must both arise out of and also be received in

the course of the employment. Neither alone is enough.

"It is not easy nor necessary to the determination of the case at bar to give a comprehensive definition of these words which shall accurately include all cases embraced within the act and with precision exclude those outside its terms. It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

See 28 R. C. L. 797; January-Wood Co. v. Schumacher, 231 Ky. 705, 22 S. W. (2d) 117.

The two elements of course and source of employment must be concurrent and co-existent. "In the course of" points to the place and circumstance under which the accident takes place and the time when it occurs. It has been said that in order to restrict the meaning beyond the reach of question, the words "arising out of" the employment were added, so that the proof of the one without the other will not bring a case within the act. The term "arising out of" points to the

origin or cause of the injury. It presupposes a causal connection between the employment and the injury, and involves the idea that the accident is in some sense due to the employment. Brady v. Oregon Lumber Co., 117 Or. 188, 243 P. 96, 45 A. L. R. 812; Pacific Fruit Express Co. v. Industrial Commission of Arizona, 32 Ariz. 299, 258 P. 253, 55. A. L. R. 975. It must be conceded that the injury of the appellee was incurred during the course of his employment, for it was during his working hours, while on duty as a private police officer (for doubtless he was available) and what he was doing was being done with the tacit permission of the employer. But did it "arise out of" the employment? Can the act of repairing his personal automobile meet the test of being in whole or in part authorized, directed, or required in the performance of his duties or in doing the jobs he was hired to do? Was it in furtherance of his employer's business, directly or indirectly, primarily or incidentally?

Had the appellee been injured while on the trips he made in his machine, even though it was caused by a break or defect in it, we would have a different case. While the car had been, and it was contemplated it would be, used in doing his work, yet it was not a part of his employment to keep his machine in condition to hire it to the company as an independent contractor. He was at liberty to do this or not as he chose. In taking advantage of an opportunity during the hours of service to repair his automobile he was serving himself. While his employment had not been suspended, the work he was doing was disassociated from his duties as an employee.

It is this right of choice on the part of both employer and employee to hire the machine that distinguishes the case from some others, such as Kingsley v. Donovan, 169 App. Div. 828, 155 N. Y. S. 801, where an employee was injured in cleaning his own motorcycle used in the service of the employer without extra compensation; and such as Derleth v. Roach & Seeber Co., 227 Mich. 258, 198 N. W. 948, 36 A. L. R. 472, and Green v. Hiestand Bros., 103 Pa. Super. 515, 157 A. 44, where traveling salesmen were overcome by carbon monoxide gas while preparing their machines for such use. Of like class are cases collated in notes, 85 A. L. R. 978 and 96 A. L. R. 467, where employees were injured while driving their own vehicles for the purpose of transport-

ing themselves from place to place in their work, compensation therefor being included in commissions or salary or paid on a mileage basis. Within that class is our own case of Turner Day & Woolworth Handle Co. v. Pennington, 250 Ky. 433, 63 S. W. (2d) 490, relied upon by appellee. There the employee was injured while riding in his own automobile, but at the expense of the employer, from his place of work to his home in another county for the week-end, which arrangement was agreed to by the employer as an inducement to continue in his service.

The two following cases may be said to be analogous to the case at bar.

In Stevens v. C. B. Parker Co., 108 Pa. Super. 520, 165 A. 665, a traveling salesman, paid on the commission basis, and using his own automobile, kept in a private garage at his own expense, and used for his own purposes as well as in the business, was killed by carbon monoxide gas while working about the car, but without the intention to use it presently in his employer's service. It was held that when he used the machine for the employer's business, he was in the course of his employment, but that on all other occasions his use of the car was not in furtherance of the business and that putting the car in condition for general use was not engaging in his employer's business or in the furtherance thereof within the meaning of the compensation act.

In Campbell's Case, 288 Mass. 529, 193 N. E. 365, it was held that the injury was too remote to be regarded as growing out of the employment, although it occurred in the course of it, where an insurance agent who, with the employer's consent, used his own car was struck in the eye by a piece of steel while repair work was being done by a garage man on a tire which had gone flat while the employee was on his way to deliver a policy.

It is true that the appellee used the machine to transport prisoners arrested for drunkenness on his employer's premises to jail or before a magistrate and received no special pay for the use of the machine. But can it be said that repairing the machine to be used for that purpose brought him within the purview of the term "arising out of his employment"? In these cases involving private guards, having the authority of a deputy sheriff, it is with difficulty that the line is drawn between what is service of the employer and what is of-

ficial duty. Where such an employee was killed in ejecting trespassers from the premises (Blue Diamond Coal Co. v. Sizemore, 254 Ky. 102, 71 S. W. [2d] 11) and where one was engaged off the premises in assisting in moving another so that he might work for the same employer, although in association with other officers of the law (Black Mountain Corp. v. Daniels' Guardian, 258 Ky. 645, 80 S. W. [2d] 824), compensation was held to be recoverable. But where such an employee acts in his official capacity off the premises and under circumstances not related to the service owing to his employer, compensation is not recoverable for injury or death. Kenmont Coal Co. v. Summers, 244 Ky. 232, 50 S. W. (2d) 515; Black Mountain Corp. v. Pace, 252 Ky. 550, 67 S. W. (2d) 673. This duality of service—private and official—is commingled here. Arresting intoxicated persons and removing them from the premises is one thing. Whether taking them to jail or to court is the same class of private employment presents a question to which no answer is here required. It seems to us, however, that it would be giving an interpretation of the term ''arising out of his employment'' far outside the intention of the law to say that it was a part of the employee's duties to furnish an automobile in good repair for purposes of transporting the prisoners.

On this aspect of the case, we may apply the test suggested by Mr. Justice Cardozo, writing for the court in Marks' Dependents v. Gray, 251 N. Y. 90, 167 N. E. 181, 183, in relation to an employee going on a personal journey being asked by his employer to attend to a minor job at the place he was going, namely:

> ''If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.''

See Barragar v. Industrial Commission of Wisconsin, 205 Wis. 550, 238 N. W. 368, 78 A. L. R. 679.

Upon either view—as repairing the automobile for his own general use and also for the purpose of hiring

it to the employer, or for use in transporting prisoners removed from its premises—the conclusion must be the same, namely, that the proximate cause of the accident was not an incidence of the employment and did not arise out of it. Hence, the court should have affirmed the ruling of the compensation board.

Judgment reversed.

Whole court sitting.

Opinion by Judge Clay (dissenting).

I am unable to concur in the majority opinion for the following reasons: Jent was a deputy sheriff, with power to make arrests. Because of that power, he was employed by the coal company to protect its property and maintain the peace. In making arrests, and removing prisoners from the premises, he not only served the commonwealth, but performed a valuable service for the company itself. It was also a part of his work to accompany the company's cashier to Hazard for the purpose of bringing out the pay roll, and occasionally to go to the village of Jeff, and sometimes to Hazard, for supplies. In the performance of these services, a car in proper repair was necessary, and was furnished by Jent. Therefore, it seems to me that, in repairing the car in order that he might do what he was employed to do, he was performing a service so naturally and reasonably connected with the employment as to be a necessary part thereof, and that the accident resulting while he was so engaged "arose out of his employment."