## BULL INSULAR LINE, Inc., et al. v. SCHWARTZ, Deputy Com'r, et al.

### No. 8477.

District Court, E. D. New York.

May 16, 1938.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert P. Nash, of New York City, of counsel), for plaintiffs.

Hardin, Hess & Eder, of New York City (Monroe Collenburg and Benjamin D. Fidanque, Jr., both of New York City, of counsel), for defendant Vascone.

Michael F. Walsh, U. S. Atty., of Brooklyn, N. Y. (Clarence Wilson, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for defendant Schwartz.

GALSTON, District Judge.

This suit, brought pursuant to Longshoremen's and Harbor Workers' Compensation Act, § 21(b), 33 U.S.Code, § 921(b), 33 U.S.C.A. § 921(b) seeks to enjoin the defendants from enforcing an award made by the Deputy Commissioner of the United States Employees' Compensation Commission and to set aside the award on the ground that the injury to Francesco Vascone, resulting in his death, was not sustained in nor did it arise out of the course of his employment.

The complaint alleges that on December 31, 1936 Vascone sustained injuries while employed by the plaintiff and while working on board the steamship "Manuela", lying at or near Pier 22, Brooklyn, and that he died as a result of the injuries so received; that thereafter the defendant, Concetta Guido Vascone, mother of Francesco Vascone, filed a claim for death benefits under provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S.C.A. § 901 et seq.; and that the plaintiffs controverted the payment of compensation on the ground that no injury or death as defined in such act was sustained by Vascone.

The Commissioner found that the deceased, on December 31, 1936, was in the employ of the Bull Insular Line, Inc.; that the liability of the employer for compensation under the act was insured by the co-defendant, the American Steamship Owners Mutual P. and I. Association; that he was working as a longshoreman engaged in the loading of cargo on the steamship "Manuela" as a member of a gang of employees;

that his duties consisted of slinging and hooking on drafts of cargo that were being hoisted from the dock to the ship and in assisting truckmen in pushing loaded hand trucks from the dock to and on the gang-plank of the ship; that at times he also assisted in pushing loaded hand trucks from the gang-plank into the ship; that at about two o'clock the entire gang of employees, including the deceased, was working at No. 5 hatch and that at that time some of the men comprising the gang went to work on the deck of the vessel while the deceased remained on the dock, waiting for his work to be resumed; that it was raining and that on rainy days it was customary for dock men, standing at or near the edge of the dock, to stand on bags of sawdust or on dunnage boards, to prevent their feet from getting wet; the dunnage boards were sometimes available on the dock and sometimes on the ship; that on other similar occasions dock men working for the said employer went aboard the ship in rainy weather to obtain dunnage boards; that the deceased went into No. 5 hatch 'tween deck of said vessel to obtain dunnage board on which to stand in the course of his employment on the dock; that the hatch covers of No. 5 'tween deck had been removed, in consequence of which the deceased fell into the hold of the vessel and from his injuries death resulted. From the foregoing facts and others recited more fully in the compensation order, the Deputy Commissioner made award to the defendant, Concetta Vascone, of $405 and bi-weekly instalments at $6.75 per week, from March 1, 1938; and to a brother, Carmello Vascone, $200 as reimbursement of funeral expenses.

It is contended by the plaintiffs that Vascone's death was not caused by an injury which he sustained in the course of his employment because, as the plaintiffs claim, Vascone's orders forbade him from going on the ship. The asserted reason for the rule is that the hazards of the ship are greater than those on the dock. So it is urged that in going on board Vascone left the sphere and took himself out of the plaintiff's employ. Reliance is had upon some New York cases arising under the New York Compensation Law, and particularly a case of Hyatt v. United States Rubber Reclaiming Co., Inc., 230 App.Div. 743, 243 N.Y.S. 474, and Erdberg v. United Textile Print Works, 216 App.Div. 574, 216 N. Y.S. 275. In the former case it appeared that the claimant, though acting in the interest of his employer, contrary to an existing rule known to him, went from his department to another and attempted to saw a board with a rip-saw. Quoting from Erdberg v. United Textile Print Works, the court said (page 475):

"'The disobedience of an order may do no more than to establish a fault on the part of an injured employee. In that case the employee would not lose his right to compensation. The order, however, may go further. It may so restrict the activities of the employee that its violation would place him outside the sphere of his employment, in which case compensation would not be payable.' The employee 'is beyond the sphere of his employment if he is injured in the course of doing the thing forbidden.'"

Continuing, the court said:

"The order or rule of the employer restricted the activities of claimant; it excluded him from working on a machine in the mechanical department. When injured, he was not doing that for which he was employed. He was performing an act not contemplated by his employment under the rule which he says had been promulgated and of which he was informed. When doing the thing forbidden, he was outside his employment."

The record discloses that Vascone had been in the employ of the Bull Insular Lines for five years or more. On the morning of the accident, between eight o'clock and noon, he was on the dock, helping to push the trucks from the dock to the ship. Beginning at two o'clock in the afternoon, working at No. 5 hatch, his job consisted in putting a sling around the cargo and hooking the sling. It was raining at the time. Vascone was one of a gang of twenty men. Vascone's foreman testified that every man knew what work he was obliged to do. It was a rule that no one was to move from the place to which he was assigned—a man working on the dock was to work on the dock and nowhere else. If he desired to do anything else he was obliged to ask the foreman or the hatch-boss.

From the testimony of the hatch-boss it seems that there were occasions, doubtless arising from the tide conditions, when the angle of the plank to the ship's side was sufficiently steep to compel the men pushing the truck to go over the ship's side, though on the afternoon in question that apparently was not necessary.

A brother of the deceased testified that he visited Vascone at the hospital after the accident and just prior to his death. The decedent told him that he had gone on 'tween deck to obtain a plank to place under his feet because it had been raining that day. There had been no boards on the dock and he went to the ship to get some.

This brother had also worked for the plaintiff prior to that time as a longshoreman in the same gang with Vascone and had assisted in pushing a truck on the dock and he said that it was customary for men to get wood or sawdust to stand on during the rain. Sometimes the members of his gang went to the 'tween deck to get boards when it was raining. In cross examination he was asked:

"Q. Well, you knew it was against the rules to go on board the ship without permission. Didn't you? A. Everybody goes on board the ship. Especially to smoke. Many of the gang. And when I worked there I went on board to smoke.

"Q. Against the rules? A. Sure."

The findings of fact of the Commissioner are silent as to the existence of the alleged rule forbidding dock employees from going on board the ship. If there was such a rule the record is not convincing with respect to its enforcement. Certainly there is no evidence presented of a written rule. On the other hand there is evidence that the rule was disregarded not merely by those who wanted to smoke but by members of the gang who sought dunnage. The failure of the Commissioner to make a finding is significant. Apparently it was generally recognized by the foremen of the gangs as well as by the members thereof that procuring dunnage in rainy weather for the purpose of working on the dock was customary when sawdust was not available. It likewise appears that it was not unusual for the men, when they could not find dunnage on the dock, to look for it in the ship. Moreover much force must be given to the fact that the dock men, pushing the trucks up the gang-plank, had to board the vessel when the angle of inclination required them so to do.

I believe that the plaintiffs fail wholly to sustain the burden of proof on the question of the existence of a rigid rule, the violation of which would take the offender out of the scope of his employment. See West Penn Sand & Gravel Co. et al. v. Norton, D.C., 18 F.Supp. 537.

The complaint must be dismissed.