**WHALEN v. LOWE, Deputy Com'r (INTERNATIONAL ELEVATING CO. et al., Interveners).**

**No. 5833.**

District Court, D. New Jersey.
April 21, 1941.

McCarter & English, of Newark, N. J. (Harry S. Austin, of New York City, of counsel), for plaintiff.

James J. Skeffington, of Newark, N. J., for defendants-intervenors.

FORMAN, District Judge.

This matter is before the court by virtue of a writ of injunction issued upon a bill of complaint filed by the plaintiff against the defendant, Samuel S. Lowe, a Deputy Commissioner of the United States Employees' Compensation Commission for the Second Compensation District, praying for injunctive relief from the order, which rejected and dismissed the claim of the plaintiff for benefits under the Longshoremen's and Harbor Workers' Compensation Act, § 1 et seq., 33 U.S.C.A. § 901 et seq., on the ground that the death of plaintiff's intestate did not occur as the result of an accident which arose out of and in the course of his employment with defendent-intervenor International Elevating Company.

Plaintiff's decedent, Patrick Whalen, a grain-trimmer by trade, was employed by the International Elevating Company. On Friday, July 26, 1935, while thus employed he was engaged in discharging the cargo of grain on the S. S. Penelope which was docked at Hoboken, N. J., on Monday, July 22, 1935.

There were five separate holds in this ship identified as Nos. 1–5 running consecutively from bow to stern, three aft of the bridge and two forward. The 'tween-decks of hold No. 2 was separated from hold No. 1 by a bulkhead, but connecting entrances on the port and starboard sides were provided therein.

The work of discharging the cargo in hold No. 1 was completed on Wednesday, July 24, 1935, at which time the hatch-covers were battened down.

The decedent was not employed in the discharge of cargo until Friday, July 26, 1935, and on that date at about 11:00 A. M. he and several others were ordered by the head trimmer to remove themselves from hold No. 4 to hold No. 2.

Evidence was offered to indicate that the mechanical conveyor used in removing the cargo left little or no work for these men until about 3:00 P. M., at which time it became necessary for them to use shovels to feed the mouth of the mechanism.

The decedent met with his death as a result of falling through the hatch in the 'tween-decks of hold No. 1 to the bottom below.

Plaintiff offered testimony to show that a broken shovel had been left in hold No. 1 on the preceding Wednesday and that the decedent *might* have entered by way of the entrance in the bulkhead to retrieve it. There was other evidence establishing the fact that hold No. 1 was so dark that Thomas Mongan, a fellow employee who entered seeking to find the decedent, got down on his hands and knees as a precautionary measure.

Defendants' witness, Robert H. Barnes, superintendent of the grain elevator, testified that there "was no occasion for anyone to go in the No. 1 Hatch" in the performance of the duties of his employment.

The Deputy Commissioner made the following finding of fact and order:

"* * * there being no detail of work in the #2 hold which required him to go into the #1 hold, the injury which resulted in his death and which was due to a fall from the 'tween decks of the #1 hatch into the lower hold did not arise out of and in the course of the employment. * * *

"Upon the foregoing facts, it is ordered by the Deputy Commissioner that the claim be and it is hereby REJECTED for the following reason:

"The accidental injury which resulted in the death of the deceased did not arise out of and in the course of the employment."

In his memorandum the Deputy Commissioner made the following pertinent statement: "If the theory that the deceased employee may have been in search of the

broken shovel when he fell, is rejected [it was rejected], no reason remotely related to any service to the employer or any natural act or necessity of the employee himself remains as a motive for the departure from his work. He took upon himself a hazard not made necessary by the employment which it could reasonably be said could or should be expected of an employee naturally following the pursuit of daily life. His purpose is unknown. Whatever it was, it was not furtherance of the employer's work, and as such cannot be said to have arisen out of and in the course of the employment."

Plaintiff refers to Section 20 of the Longshoremen's and Harbor Workers' Compensation Act, providing in part as follows:

"In any proceeding for the enforcement of a claim for compensation under this Act [chapter] it shall be presumed, in the absence of substantial evidence to the contrary—

"(a) That the claim comes within the provisions of this Act [chapter]." 33 U.S.C.A. § 920(a).

Plaintiff does not contend that the decedent *actually* entered hold No. 1 to retrieve a shovel, but only offered that testimony to suggest one of his motives. She frankly admits that she does not know why he entered the compartment, but says that the act recognizes this inability to explain, and, hence, a presumption arises in her favor which must be overcome by substantial evidence in behalf of the employer (who theoretically is better qualified to neutralize the plaintiff's case).

Findings of fact made by the Deputy Commissioner must be accepted as conclusive if supported by evidence, unless there is some irregularity in the proceedings before him. Whitfield v. Hoage, 63 App.D.C. 237, 71 F.2d 690. Our inquiry is confined to whether or not the conclusion of the Commissioner is supported by the evidence. Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229.

Plaintiff relies solely upon the presumption accorded by the statute. Defendants' evidence in rebuttal was that there "was no occasion for anyone to go in No. 1 Hatch" in the performance of his duties of employment. This statement is consistent with the physical condition of Hold No. 1 which was described during the trial.

We conclude that this evidence is sufficient to sustain the Commissioner's conclusion. Hence, the relief prayed for is denied.