**PENN STEVEDORING CORPORATION et al. v. CARDILLO, Deputy Commissioner, Second Compensation District, et al.**

District Court, S. D. New York.

Aug. 28, 1947.

992

Kirlin, Campbell, Hickox & Keating, of New York City (Vernon S. Jones, of New York City, of counsel), for plaintiffs.

John F. X. McGohey, of New York City, for defendant Cardillo.

Milton Koerner, of New York City, for defendant Best.

RIFKIND, District Judge.

Action by an employer, Penn Stevedoring Corporation, and its insurance carrier, Glens Falls Indemnity Company, to set aside, under § 921(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., a compensation award made by defendant Cardillo, a Deputy Commissioner under the Act, to the children of Earl Best, the deceased employee.

The defendants, Cardillo and Lulu Mae Best, mother of the children, move, before answer, to dismiss the complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment. The plaintiffs cross-move for summary judgment.

It is clear that the findings of the deputy commissioner support the award; the only question is whether the evidence supports the findings. Marshall v. Pletz, 1943, 317 U.S. 383, 63 S.Ct. 284, 87 L.Ed. 348; Parker v. Motor Boat Sales, Inc., 1941, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184; South Chicago Coal and Dock Co. v. Bassett, 1940, 309 U.S. 251, 60 S.Ct. 544, 84 L. Ed. 732. Since the transcript of the hearing before the deputy commissioner is made part of the complaint, all issues can be resolved upon this motion.

On July 13, 1946, the deceased was employed as operator of a gasoline tractor, by means of which he hauled freight from the dock at Pier 40 on the North River in New York to a car float, used to transport cargo west, to the New Jersey shore. The parties have called this the west-bound float. Alongside the west-bound float was a float from which the plaintiff stevedoring company was engaged in unloading freight—the east-bound float. Decedent was last seen alive on the east-bound float. His hat was found shortly after his disappearance on the edge of the east-bound float; his body was discovered later that day in the water between the floats, near where his hat had been found.

The deputy commissioner's findings of fact included the following:

" * * * that at approximately 11:35 a. m. on July 13, 1946, the employee herein operated his tractor and hauled a load of merchandise to the west bound float which was tied up alongside of an east bound float at the pier; that after discharging the flat car which was loaded with freight, the employee as usual, had about 10 minutes' spare time before making another trip during which period he had to wait until the freight on the flat car was loaded onto the freight car; that during such lull in the work the employee walked toward the river-end of the float, presumably to answer a call of nature and thereafter proceeded to return by way of the east bound float which was tied up alongside of the west bound float; that on the east bound float the employee stopped momentarily and curiously examined the

bales of Army clothing which were being unloaded from the said east bound float; that he was cautioned by a tractor-operator on the east bound float not to handle the bales, whereupon the employee left and proceeded in the direction of the west bound float and to the place where he had left his tractor; that while crossing from the east bound float to the west bound float, the employee accidentally fell between the two floats into the water and died by asphyxsia of submersion; that the employee did not violate any fixed orders of the employer and he did not commit an illegal act; that employees performing work similar to that of the deceased employee did occasionally during the 10 minute waiting period between trips stroll away from the place where they had left their tractors and when the flat-cars were being loaded or unloaded; that the death of the employee arose out of and in the course of the employment; that the employer and carrier are liable for the payment of death benefits to the surviving children. * * *"

Plaintiffs contend that a number of the deputy commissioner's findings are unsupported by the evidence, that others are based on evidence from which only inferences inconsistent with the findings are permissible. Plaintiffs' position is summarized in their memorandum:

"1. Best's sole work was to operate a tractor and haul freight from the dock to a westbound car float.

"2. He was not permitted nor was he even suffered to go upon the eastbound barge.

"3. He violated orders in going upon the eastbound barge. He had been warned 'each and every day to stay on the job.'

"4. He was not 'returning' to his place of employment when he left the westbound float to go upon the eastbound float. On the contrary, he was deviating from his employment.

"5. He went on the eastbound float not on any business of his employer and not for his employer's benefit.

"6. He went upon the eastbound float solely for his own private purposes.

"7. He was killed before he could get back to his westbound barge and his death was caused by a hazard not connected in any way with the place of his work.

"8. His injury did not arise out of and in the course of his employment."

Plaintiffs' contention boils down to two propositions: First, Best, by boarding the east-bound float violated a company order, thereby taking himself out of his employment. Second, whether or not the first proposition is true, Best's presence on that float was an abandonment of his employment. If either is true, compensation may not be awarded, according to § 902(2) of the Act.

As to the first proposition, there was ample evidence before the deputy commissioner from which he could infer that if there was a company rule limiting the scope of Best's wanderings, it was not strictly enforced. Testimony given at the hearing by Messrs. Hopkins and Gilchrist especially give support to the findings. Violation by the employee of an unenforced rule cannot defeat an otherwise well-founded claim to compensation. Bull Insular Line, Inc., v. Schwartz, D.C.E.D.N.Y.1938, 23 F.Supp. 359.

As to the second proposition, it is certainly clear that no duty owed the employer took the deceased to the east-bound float, nor had he effected a return to the west-bound float at the time of the accident. But the evidence clearly lends itself to the inference that the stroll taken by Best on his employer's premises in the 10 minute lull during which he waited for his tractor, was not such an abandonment of his employment as would bar recovery of an award.

Plaintiffs have cited a number of decisions to support their contention that the finding of no abandonment is "not in accordance with law," 33 U.S.C.A. § 921(b). The cases are distinguishable.

In Metropolitan Sand & Gravel Corp. v. Lowe, D.C.E.D.N.Y.1938, 22 F.Supp. 65, the deceased employee, a barge captain, had violated the clear duty of remaining with his barge. In the case at bar evidence supports a finding that abandonment of the tractor during the waiting period was not a violation of any duty, that it was not un-

usual for employees to wander off during this period.

In Whalen v. Lowe, D.C.D.N.J.1941, 38 F. Supp. 248, a commissioner's finding of abandonment of employment was sustained by the court. Such a case is not persuasive in an action in which the court is asked to reject the commissioner's findings. Cardillo v. Liberty Mutual Insurance Co., 1947, 67 S.Ct. 801, 91 L.Ed. ——.

In New Amsterdam Casualty Co. v. Hoage, 1931, 60 App.D.C. 40, 46 F.2d 837, the employee was killed on the public streets, away from the employer's premises.

In Monohan v. Hoage, 1937, 67 App.D.C. 174, 90 F.2d 419, again, the commissioner's findings were sustained.

Plaintiffs rely on 71 C.J. 657:

"An accident cannot be said to arise out of the employment where it is due to a new and added peril to which the employee by his own conduct has needlessly exposed himself, unless there has been an acquiescence by the employer."

But there was evidence at the hearing from which the deputy commissioner could infer, as he did, that the instant case was covered by the exception stated in the last clause of the quoted rule. Further on in the same section of Corpus Juris, a rule is stated:

"An employee may, in intervals of leisure during his working hours, move from place to place on the premises of the employment and visit with coemployees or other persons, and, in doing these things within the bounds of reason, he does not go out of the course of his employment; and where injury results from a risk incidental to the performance of his contract while so visiting, the injury also arises out of the employment." 71 C.J. 680; West Penn Sand & Gravel Co. v. Norton, 3 Cir., 1938, 95 F. 2d 498, is in accord.

The uniformly liberal construction in favor of claimants which the courts have given the Act since its inception (see, e. g., Baltimore & Philadelphia Steamboat Co. v. Norton, 1932, 284 U.S. 408, 52 S.Ct. 187, 76 L.Ed. 366; Harbor Marine Contracting Co. v. Lowe, 2 Cir.,

1945, 152 F.2d 845; Travelers Insurance Co. v. Branham, 4 Cir., 1943, 136 F.2d 873), the presumption of coverage set up by § 920(a) of the Act, and a common-sense appreciation of the remedial nature of its provisions would compel the court to affirm findings based on more equivocal evidence than was adduced in the case at bar. A recent decision of the United States Supreme Court indicates the role of the courts under the Act. " * * * the reviewing court's function is exhausted when it becomes evident that Deputy Commissioner's choice has substantial roots in evidence and is not forbidden by law." Cardillo v. Liberty Mutual Ins. Co., 1947, 67 S.Ct. 801, 802, 91 L.Ed. 743.

In view of the foregoing, the prematurity of plaintiffs' cross-motion for summary judgment before answer need not be discussed.

Defendant's motion for summary judgment is granted.

Plaintiffs' cross-motion for summary judgment is denied.