HONORA HAMMOND, PETITIONER-APPELLANT, v. THE GREAT ATLANTIC & PACIFIC TEA COMPANY, RESPONDENT-RESPONDENT.

Argued March 17, 1970—Decided April 20, 1970.

8

*Mrs. Mabel L. Richardson* argued the cause for petitioner-appellant (*Messrs. Stavis, Richardson, Koenigsberg & Rossmoore,* attorneys).

*Mr. James A. Robottom* argued the cause for respondent-respondent (*Messrs. Haskins, Robottom & Hack,* attorneys; *Mr. James A. Robottom* on the brief).

The opinion of the court was delivered by

PROCTOR, J. In this workmen's compensation case, the sole issue is whether petitioner is entitled to recover for injuries she received when she fell at a point near her employer's premises shortly after leaving work. Both the Division of Workmen's Compensation and the County Court held that petitioner's injuries were not compensable since the accident did not arise out of and in the course of her employment. *N. J. S. A.* 34:15–7. The Appellate Division affirmed in an unreported *per curiam* opinion. We granted certification. 55 *N. J.* 161 (1969).

The material facts are undisputed. Petitioner, Honora Hammond, was employed as an executive secretary by the respondent, The Great Atlantic & Pacific Tea Company. She had held the position for nineteen years. Respondent's building in which petitioner worked is on the corner of Sherman Avenue and East Peddie Street in Newark. The building's entrance is on Sherman Avenue which runs north and south. East Peddie Street runs east and west. The respondent maintains a parking lot for the use of its employees on the south side of East Peddie Street, about 300 feet to the east of the intersection of Sherman Avenue and East Peddie Street. After leaving work, employees using the lot would normally walk north on Sherman Avenue to the intersection and then east on East Peddie Street, across

Sherman Avenue, past a diner and a rag factory, and continue on the same side of East Peddie Street until they reached the lot. Both East Peddie Street and its adjoining sidewalk were in "very bad condition" with "broken sidewalks" and "slabs of concrete missing." According to the respondent's superintendent, it was a typical run-down factory neighborhood.

Mrs. Hammond relied on her husband or public transportation to get to work. Transportation from work for four years preceding her accident was furnished by a woman co-employee who parked her car in the lot provided by the respondent. Mrs. Hammond rarely walked to the lot herself because of the poor condition of the sidewalk and because of a limp which gave her difficulty in walking. The limp was the result of a preexisting arthritic hip which had left one leg an inch and a half shorter than the other.[1] She generally left respondent's building, walked north on the sidewalk of Sherman Avenue, crossed East Peddie Street and some adjoining railroad tracks, and finally crossed Sherman Avenue to a spot where she waited to be picked up by her co-employee. The distance from respondent's building to the point where she waited for her ride was substantially less than the distance from the building to the parking lot.

On December 12, 1966, Mrs. Hammond left work at the end of the day and proceeded toward the corner where she usually waited to be picked up. While en route she fell

---

[1]The judge of compensation found that petitioner waited for her ride home at the northeast corner of Sherman Avenue and East Peddie Street instead of walking to the parking lot "because apparently the sidewalk [to the parking lot] was not in good condition and the distance was greater." The county court found that petitioner waited at the corner "because of convenience to her and her driver, and not by reason of the neighborhood conditions or street conditions." We think the county court ignored the undisputed testimony that petitioner waited at the corner because of her disability and the poor condition of the sidewalk. The Appellate Division indicated that it doubted the validity of the county court's conclusion by expressly refusing to take a position on the point. In its view the point was immaterial to the decision.

near the railroad tracks and incurred the injuries for which she now claims compensation.

The judge of compensation and the county court judge both reasoned that the "going and coming" rule, which denies compensation for injuries incurred while traveling to or from work, barred petitioner's recovery. The Appellate Division affirmed, reasoning that petitioner could only recover if she were injured while en route to the parking lot; it was conceded that she was not.

Under our Workmen's Compensation Act, the basic test for compensability is whether an injury arises out of and in the course of employment. An accident arises out of employment when it results from risks reasonably incidental to the employment. *Geltman v. Reliable Linen & Supply Co.,* 128 *N. J. L.* 443, 446 (E. & A. 1942). An accident arises in the course of employment when "it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." *Bryant Adm'x. v. Fissell,* 84 *N. J. L.* 72, 77 (Sup. Ct. 1913). Out of the basic test for compensability a subordinate doctrine was developed by the courts known as the "going and coming" rule. See *Gullo v. American Lead Pencil Co.,* 119 *N. J. L.* 484 (E. & A. 1938). This rule, which denies compensation for accidents occurring while the employee is going to or coming from work, produced many harsh results which led courts to carve out numerous exceptions to it. These exceptions include situations where the employee is on a special mission for his employer, *Bobertz v. Board of Education,* 135 *N. J. L.* 555 (E. & A. 1947), where the employer furnishes transportation to and from the place of employment, *Rubeo v. Arthur McMullen Co.,* 117 *N. J. L.* 574, 579 (E. & A. 1937), where the use of an automobile or other form of vehicle is required in the performance of the contract of service, *Demerest v. Guild,* 114 *N. J. L.* 472, 476 (E. & A. 1935), and where the employer pays for the employee's transportation, *Filson v. Bell*

*Telephone Laboratories, Inc.,* 82 *N. J. Super.* 185 (App. Div. 1964). Even these exceptions have been broadly construed to comport with the liberal philosophy behind the enactment of the Workmen's Compensation Act. See, *e. g., Ricciardi v. Damar Products Co.,* 45 *N. J.* 54 (1965) ; *Lehigh Navigation Coal Co. v. McGonnell,* 120 *N. J. L.* 428 (Sup. Ct. 1938), *aff'd o.b.* 121 *N. J. L.* 583 (E. & A. 1939). Thus, in *Ricciardi, supra,* an accident occurring on the way home from a company picnic was held to be compensable within the special mission exception. And in *Lehigh, supra,* compensation was allowed when an employee was killed after his employer had provided a commutation ticket for railroad commutation although the accident occurred 75 to 100 feet from the place where he would board the train.

The large number of exceptions and their application by the courts have led one commentator to remark that "the exceptions are so numerous that they have swallowed the rule." Horovitz, "Workmen's Compensation: Half Century of Judicial Developments," 41 *Neb. L. Rev.* 1, 51 (1961).[2] He and others have suggested that the rule be abandoned in its entirety. *Id.,* at 52. See also Pound, "Comments on Recent Important Workmen's Compensation Cases," 15 *NACCA L. J.* 45, 86–87 (1955) ; Note, "Arising 'out of' and 'in the Course of' the Employment Under the New Jersey Workmen's Compensation Act," 20 *Rutgers L. Rev.* 599, 613–21 (1966).[3] This criticism of the rule seems well founded. It

---

[2]Horovitz notes that there are at least 19 exceptions and that Larson adds many more which are supported by cases throughout the country. 41 *Neb. L. Rev.. supra* at 51.

[3]Horovitz makes the following observations: "The rule [going and coming] has been the source of injustice to injured workers for many years. It has put upon them the burden of proving an exception to this narrow court-made rule. It should be abandoned in favor of deciding liberally in each case whether the journey and injury in question arose in the course of the employment. The rule has been abandoned in many foreign countries, and workers are protected while going to and from work as if they were on paid time [citing as examples Israel, France, Germany, and New South Wales]. Today, because of speeding automobiles, the journey to and from work

can reasonably be argued that travel to and from work should be compensable as incidental to the employment. See dissenting opinion of Justice Jacobs in *Moosebrugger v. Prospect Presbyterian Church,* 12 *N. J.* 217 (1953). As Chief Justice Weintraub, writing for a majority of this Court, commented, "that rule [going and coming rule] is not free from dispute since travel to and from the place of work quite obviously is essential to the work itself." *Ricciardi v. Damar Products Co., supra* at 61. Not only is travel to and from work essential to the employment, but it is in many cases attendant with greater risks than the actual work itself. As the author of the Note in 20 *Rutgers L. Rev., supra* at 620, wrote:

With an increasing number of automobiles on the highways adding to the hazards of driving to work, along with the latest industrial safety precautions decreasing the likelihood of injury at work, the trip to and from the regular place of work is in many instances the most hazardous part of the working day. Conditions and necessary incidents of employment have subjected the worker to those hazards; therefore, the courts should consider whether the trip to and from work is not within the reasonable contemplation of the employer as constituting part of his relationship with the employee.

See also 41 *Neb. L. Rev.,* supra at 52.

The present case is illustrative of this point. Assuredly, petitioner faced far less risk of injury seated at her desk than she did in transit to or from work when one considers the conditions in the vicinity of her place of employment. And it can hardly be said that these risks were not incurred in conduct incidental or indeed esesntial to her employment. But we need not consider here the question of whether the going and coming rule should be abandoned. Our comments are set forth merely to emphasize that the rule should be construed liberally within the spirit of the workmen's compensation legislation. As Justice Francis

---

may be the most dangerous part of the employment. The protection of workmen's compensation should be afforded during such journeys." 41 *Neb. L. Rev., supra* at 52.

noted in *O'Brien v. First Camden Nat. Bank & Trust Co.,* 37 *N. J.* 158, 163 (1962): "Too easy reference to the subordinate going and coming precept manifestly pointed in the direction of injustice in particular fact complexes." Workmen's compensation legislation is designed to place the cost of accidental injuries which are work-related upon the employer who can make these funds available out of his operating expenses, and this legislative goal must always be kept in mind when considering factual patterns presented.

█ Viewing the present case in accordance with the philosophy of our Workmen's Compensation Act, we believe petitioner's injuries are compensable. Our courts have recognized that where an employee suffers accidental injuries in a parking lot provided by his employer, the employee is entitled to compensation. *Rice v. Pharmaceuticals, Inc.,* 65 *N. J. Super.* 579 (App. Div. 1961); *Buerkle v. United Parcel Service,* 26 *N. J. Super.* 404 (App. Div. 1953). *Cf. Konitch v. Hartung,* 81 *N. J. Super.* 376 (App. Div. 1963). The "great majority of jurisdictions" also consider parking lots owned or maintained by the employer part of the employer's premises, and accordingly allow compensation for injuries incurred thereon. 1 Larson, *Workmen's Compensation Law* § 15.41 (1968). It is also clear that injuries are compensable which occur while an employee is traveling between two portions of his employer's premises. *Zabriskie v. Erie R. R. Co.,* 86 *N. J. L.* 266 (E. & A. 1914); see generally 1 Larson, *supra,* § 15.14. As a result, most courts treat an injury occurring in a public street between the plant and the parking lot as compensable since it occurred on a necesary route between two portions of the employer's premises. 1 Larson, *supra,* § 15.14; *Lewis v. Walter Scott & Co., Inc.,* 50 *N. J. Super.* 283 (App. Div. 1958). In *Lewis,* petitioner was a member of a "car pool" which parked in a lot provided by the employer. Petitioner was injured when he slipped and fell on an icy sidewalk while walking from the employee parking lot to the entrance of the build-

ing in which he worked. The only means of reaching the building from the lot was along the public sidewalk where the accident occurred. The Appellate Division allowed compensation holding that the accident arose out of and in the course of employment.

Since we agree with the holding in *Lewis,* the question presented by this appeal becomes a narrow one. Petitioner's fall was accidental and accordingly she would have received compensation if she had fallen while en route to the parking lot; we need only decide whether her shorter walk to a nearby corner in order to wait for her driver-co-employee precludes compensation. Under the circumstances, we do not think that it does. There is no doubt that the parking lot was maintained for the benefit of the employer and its employees. Respondent's building is in the factory section of Newark and its interests are better served by providing means for employees to use their own transportation facilities. See *McCrae v. Eastern Aircraft,* 137 *N. J. L.* 244 (Sup. Ct. 1948). That benefit was not diminished because petitioner waited for her rider at a spot nearby the normal route to and from the parking lot. We cannot accept respondent's contention that petitioner should not recover because she was beyond its control when she left its premises. There are numerous instances of compensable accidents which occur when the employee is beyond his employer's control. See *O'Brien v. First Camden Nat. Bank & Trust Co., supra; Ricciardi v. Damar Products Co., supra; Filson v. Bell Tel. Labs., Inc., supra.* See also 20 *Rutgers L. Rev., supra,* at 618.

We think petitioner's injuries unquestionably occurred in the course of her employment. She was in a place where she might "reasonably be" considering the condition of the public streets and sidewalks and her preexisting physical condition. Her injuries arose out of the employment since the risk of her accident was reasonably incidental thereto.

The judgment of the Appellate Division is reversed and the matter is remanded to the Division of Workmen's Com-

16

pensation for a determination of the amount of compensation to which petitioner is entitled.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.