SAM BERGMAN, PETITIONER-APPELLANT, v. PARNES BROTHERS, INC., RESPONDENT-APPELLEE.

Argued June 8, 1971—Decided July 1, 1971.

Mr. *Frederic M. Milstein* argued the cause for petitioner-appellant (*Messrs. Madnick, Milstein & Mason,* attorneys; *Mr. Frederic M. Milstein* on the brief).

Mr. *Roland R. Formidoni* argued the cause for respondent-appellee (*Messrs. McLaughlin, Dawes & Abbotts,* attorneys; *Mr. Roland R. Formidoni* on the brief).

The opinion of the Court was delivered by

PROCTOR, J. This is a Workmen's Compensation case. Compensation was denied by the Division of Compensation and judgment was affirmed by the county court. On petitioner's appeal, the Appellate Division by a divided court affirmed the judgment of the county court. Petitioner appeals to this Court as of right. *R.* 2:2–1(a)(2).

The petitioner, Sam Bergman, was employed as a presser by respondent Parnes Bros., Inc. in its garment factory in Freehold. He was compensated on a piece work basis rather than paid a salary or an hourly wage. Prior to March 12, 1968, the date of the accident for which compensation is claimed, petitioner had worked for Parnes Bros. for ten or twelve weeks. He commuted to work by bus from his farm three miles south of Freehold.

On the day in question, petitioner arrived at respondent's factory about 7:30 A.M. He punched his card and was prepared to start work at 8:00 A.M., the usual time. However, there were no garments yet completed and ready to be pressed. He was told by Izio Parnes, one of respondent's owners and the foreman in charge of production, that there would be no work for about two hours. Such delays were frequent, and as a result respondent had a policy of telling pressers in advance to come in late if there would be no work for them in the early morning. However, for some reason not explained, respondent had not notified petitioner of the unavailability of work on the morning in question.

After staying at the factory for a brief period, petitioner was told by one of respondent's owners that he could go home and return in two hours when there would be work.[1] This offer was agreeable to petitioner particularly since there was

[1]There was a factual dispute whether petitioner was advised to go home or whether he asked permission to do so. Neither the Division nor the County Court resolved this dispute. The majority of the Appellate Division, exercising its original jurisdiction, found as a fact "that he was told by his employer that he could go home. He was neither advised to go home nor did he request permission to go home." The dissenting judge accepted this finding and so do we.

apparently no comfortable place on the premises to relax during a work lull. Petitioner testified:

I wasn't comfortable over there. You see * * * you have to sit over there and the steam from the iron comes in your face and the noise from the machines.

Izio Parnes drove petitioner to the bus stop, and petitioner took a bus home from there.

Petitioner remained at home for about one hour and forty minutes. He ate breakfast and when he finished, rather than take a bus—buses ran infrequently during the midmorning— he left for work in his car. Driving conditions were poor; rain mixed with snow was falling. Apparently, as a result of these conditions, petitioner lost control of his car and skidded off the road. The accident resulted in the injuries for which compensation is claimed.

Both the Division and the County Court held that the "going and coming" rule applied to the case and barred compensation. The majority opinion of the Appellate Division phrased the issue as "whether an accident occurring off the premises after an employee who was compensated only for piecework that he performed has reported to work, but has been temporarily released from the premises by his employer due to no work being available and directed to return in a short time" is compensable. The majority held that the case was governed by the "going and coming" rule and that since the facts did not bring it within one of the exceptions to that rule, compensation should be denied. The dissenting judge found the "going and coming" rule inapplicable and concluded that petitioner's injuries were compensable since his return home during the work lull was reasonable and since he was "in a place where he might reasonably be."

█ Under our Workmen's Compensation Act, the test for compensability is whether an injury arises out of and in the course of employment. An accident arises out of employment

when it results from risks reasonably incidental to the employment. *Geltman v. Reliable Linen & Supply Co.,* 128 *N. J. L.* 443 (E. & A. 1942). An accident arises in the course of employment when "it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." *Bryant, Adm'x v. Fissell,* 84 *N. J. L.* 72, 77 (Sup. Ct. 1913). Out of the basic test for compensability a subordinate doctrine was developed by the courts known as the "going and coming" rule. See *Gullo v. American Lead Pencil Co.,* 119 *N. J. L.* 484 (E. & A. 1938). This rule, which we have recently had occasion to criticize, see *Hammond v. The Great Atlantic & Pacific Tea Co.,* 56 *N. J.* 7 (1970), denies compensation for accidents occurring while the employee is going to or coming from work. See *Moosebrugger v. Prospect Presbyterian Church,* 12 *N. J.* 212 (1953). The rule is subject to the numerous exceptions discussed in *Hammond,* and its continued viability is open to question.[2] But whatever the current status of the rule, we do not believe it bars compensation in this case.

It is generally recognized that injuries suffered by an employee during an enforced work lull may be compensable.

---

[2]As we said in *Hammond v. The Great Atlantic & Pacific Tea Co.,* 56 *N. J.* 7, 12–13 (1970) :

The large number of exceptions and their application by the courts have led one commentator to remark that "the exceptions are so numerous that they have swallowed the rule." Horovitz, "Workmen's Compensation: Half Century of Judicial Developments," 41 *Neb. L. Rev.* 1, 51 (1961). He and others have suggested that the rule be abandoned in its entirety. *Id.,* at 52. See also Pound, "Comments on Recent Important Workmen's Compensation Cases," 15 *NACCA L. J.* 45, 86–87 (1955) ; Note, "Arising 'out of' and 'in the Course of' the Employment Under the New Jersey Workmen's Compensation Act," 20 *Rutgers L. Rev.* 599, 613–21 (1966). This criticism of the rule seems well founded. It can reasonably be argued that travel to and from work should be compensable as incidental to the employment. See dissenting opinion of Justice Jacobs in *Moosebrugger v. Prospect Presbyterian Church,* 12 *N. J.* 212 (1953). As Chief Justice Weintraub, writing for a majority of this Court, commented, "that rule

See 1 *Larson, Workmen's Compensation Law,* § 21.74, pp. 335-338. Our cases are in accord with this general view. *Crucible Steel Co. v. Court of Common Pleas,* 116 *N. J. L.* 393 (E. & A. 1936); *Macko v. Herbert Hinchman & Son,* 24 *N. J. Super.* 304 (App. Div. 1953). Although our cases involved injuries incurred by employees while they remained on the employer's premises, cases from other jurisdictions make it clear that coverage does not require that the accident for which benefits are claimed occur on the premises. *E. g., Penn Stevedoring Corporation v. Cardillo,* 72 *F. Supp.* 991 (S. D. N. Y. 1947), *aff'd o. b.* 165 *F.* 2d 789 (2d Cir. 1948); *Ingraham v. Lane Construction Corporation,* 285 *App. Div.* 572, 139 *N. Y. S.* 2d 347, *aff'd.* 309 *N. Y.* 899, 131 *N. E.* 2d 577 (1955); *cf. State Comp. Ins. Fund v. Workmen's Comp. App. Bd.,* 67 *Cal.* 2d 925, 64 *Cal. Rptr.* 323, 434 *P.* 2d 619 (1967).

In *Ingraham v. Lane Construction Corporation, supra,* the claimant took shelter in a co-employee's car while waiting orders from his foreman. While there, he attempted to fix a loose light on the car's dashboard, but was injured when the screwdriver he was using slipped and struck him in the eye. The Court of Appeals affirmed an award of benefits.

---

[going and coming rule] is not free from dispute since travel to and from the place of work quite obviously is essential to the work itself." *Ricciardi v. Damar Products Co., supra* 45 *N. J.* at 61. Not only is travel to and from work essential to the employment, but it is in many cases attendant with greater risks than the actual work itself. As the author of the Note in 20 *Rutgers L. Rev., supra* at 620, wrote:

> With an increasing number of automobiles on the highways adding to the hazards of driving to work, along with the latest industrial safety precautions decreasing the likelihood of injury at work, the trip to and from the regular place of work is in many instances the most hazardous part of the working day. Conditions and necessary incidents of employment have subjected the worker to those hazards; therefore, the courts should consider whether the trip to and from work is not within the reasonable contemplation of the employer as constituting part of his relationship with the employee.

See also 41 *Neb. L. Rev., supra* at 52." (footnotes omitted)

The same result was reached in *Penn Stevedoring Corporation v. Cardillo, supra,* under similar facts. There a truck driver, who had emptied his load and had a brief wait before he could make another trip, was wandering about some floats moored at a dock when he slipped and fell in the water. There was a custom, acquiesced in by the employer, for drivers to roam about the docks during idle periods. The court upheld an award of compensation. Commenting on this case, Larson states:

> This case is a good illustration of the growing category of situations, discussed in general terms at the outset of the chapter, in which the "mutual benefit" theory is inadequate to explain the result, and in which work-connection must be found in a combination of known human nature and the particular circumstances and practices of the employment. *Larson, supra* at § 21.74, p. 337.

We read these cases to say that during a work lull, an employee may leave the work premises, when such conduct is reasonable. The reasonableness of the conduct depends on the overall circumstances of the employment. In the present case, the work lull was long and the premises uncomfortable. There was apparently no suitable place on the premises themselves where petitioner could wait. Respondent's plant was not far from petitioner's farm and the weather was inclement. If he had walked about the environs with his employer's permission or acquiescence during the two-hour lull, we would not question the reasonableness of his activity in relation to his work, even if he were not injured on the employer's premises. *Cf. Piazza v. Prince's Farm,* 86 *N. J. Super.* 100 (App. Div. 1965). As is stated by Larson:

> The leeway accorded an employee during an enforced hiatus in his work extends not only to resting and sleeping but also to a certain amount of wandering around and even undertaking what otherwise might seem to be distinctly personal activities. *Larson, supra* at § 21.74 p. 336.

The sole question is whether petitioner's return home during the lull bars recovery because of the "going and coming"

rule. We do not think it should. In view of the uncomfortable nature of respondent's factory, the length of the work lull, and the distance to petitioner's home, we cannot say that the return home was unreasonable in relation to his work. Respondent's policy of giving its workers advance notice of expected work lulls shows that respondent was aware it was more reasonable and better for employment relations to permit employees to remain away from the premises during such periods. Having failed to so notify petitioner, respondent, consistent with its policy, expressly permitted him to go home until work was available. It was to respondent's benefit for its workers to leave the premises during extended lulls, for surely they would be fresher and better able to perform their duties if they could escape from the noise and steam produced by the plant's machinery when they were not working.

Nor do we think compensation can be denied because, as respondent argues, petitioner's injuries did not stem from a hazard associated with his employment, but from a hazard to which the general traveling public is constantly exposed. That could be said of many injuries incurred by workers away from their employer's premises. Yet we have always held such injuries compensable where we found them to be reasonably work related. *E. g., Hammond v. The Great Atlantic & Pacific Tea Co., supra* (employee injured on public sidewalk near employer's premises); *Ricciardi v. Damar Products Co.,* 45 *N. J.* 54 (1965) (employee killed in automobile accident while returning home from picnic sponsored by employer); *Rachels v. Pepoon,* 5 *N. J. Misc.* 122 (Sup. Ct. 1927), *aff'd o. b.* 104 *N. J. L.* 183 (E. & A. 1928) (employee died as a result of injuries received in an automobile accident while enroute from home to work in his own car, but while traveling on same route he would ordinarily take had he gone to job site from employer's place of business; the trip was made with employer's permission). See also *O'Brien v. First Camden Nat. Bank & Trust Co.,* 37 *N. J.* 158 (1962); *Piazza v. Prince's Farm, supra.*

In summary, we do not think the "going and coming" rule applies to this case. Petitioner had already reached his work site, and had gone home only because of an enforced work lull. The premises were uncomfortable and the lull was long. Had his employer notified him in advance of the lull as was the pattern, he would never have gone to work in the early morning. But since he did arrive at the usual starting time, his employer expressly permitted him to return until work was available and indeed drove him to the bus station. As a result he was twice exposed to the risks of travel back and forth from his home. In all these circumstances, we think petitioner was injured in a place where he might "reasonably be" in relation to his employment and that, therefore, his injuries arose in the course of his employment. It is, of course, undisputed that if petitioner's injuries occurred during the course of his employment, they were reasonably incidental thereto, and therefore arose out of the employment.

The judgment of the Appellate Division is reversed and the matter is remanded to the Division of Workmen's Compensation for a determination of the amount of compensation to which petitioner is entitled.

FRANCIS, J. (concurring). I concur in the result reached by the Court in this case. The record reveals clearly that prior to March 12, 1968, the day of the accident, respondent had established a practice of giving advance notice to its piece-work employees, such as the petitioner, not to report for work at the usual hour in the morning, i. e., 8 A.M., whenever there was no work to be performed at that time. It is undisputed that on the day of the accident, contrary to the practice, respondent did not notify Bergman in advance not to appear at its place of business at 8 A.M. even though there would be no garments ready for pressing at that time. It was that failure which was responsible for Bergman's unneeded presence on the employer's premises at 8 A.M. Consequently, upon being told by his employer that he could

go home but that he should return in two hours when he would be needed, I believe that the trip to his home and the return to the employer's plant ought to be considered sufficiently causally related to his employment as to be deemed within its course.

However, the Court's opinion, citing *Hammond v. The Great Atlantic & Pacific Tea Co.*, 56 *N. J.* 7, 12–13 (1970), seems to indicate that the life expectancy of what has come to be called the "going and coming" rule is open to question. I do not entertain that view. There is no right to workmen's compensation benefits unless the employee suffers an accident arising out of and in the *course* of his employment. It has long been the rule in this State and elsewhere that during an employee's ordinary, routine day-to-day journey to work from home and while returning home from work, he is not in the course of employment. If, however, the employee, while going to or from work, engages in some special errand at the employer's request, or if there are circumstances present indicating that the trip in part serves a purpose reasonably incidental to the duties of his employment, our cases have accepted the view that an accident occurring during such a trip arises "out of" and "in the course of" the employment, and is therefore compensable. *O'Brien v. First Camden Nat'l Bank & Trust Co.*, 37 *N. J.* 158 (1962).

I adhere to the basic rule and to the exceptions, and I do not find at all persuasive the suggestion that an employee ought to be considered in the course of employment during his trips between home and work, simply because he has to walk or ride some distance on public streets in order to reach his employer's premises.

MOUNTAIN. J., joins in this concurrence.

FRANCIS and MOUNTAIN, JJ., concur in result.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and MOUNTAIN—6.

*For affirmance*—Justice HALL—1.